IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Michael C. Romig,                              :
                              Petitioner       :
                                               :
             v.                                :     No. 684 M.D. 2019
                                               :     Submitted: July 14, 2023
John Wetzel, Kathy Brittian,                   :
Keri Moore and Department of                   :
Corrections,                                   :
                              Respondents:

BEFORE:     HONORABLE ANNE E. COVEY, Judge
            HONORABLE MICHAEL H. WOJCIK, Judge
            HONORABLE MARY HANNAH LEAVITT, Senior Judge

OPINION
BY SENIOR JUDGE LEAVITT            FILED:   January 29, 2024


             Michael C. Romig, *pro se*, has filed a petition for review[1] in the nature

of a mandamus action against John Wetzel, Kathy Brittian,[2] Keri Moore, and the

Department of Corrections (Department), seeking to compel the Department to

comply with its procedures for the handling of legal mail. The gravamen of Romig's

action is that the Department's mailroom rejected certified mail from the Mifflin

County Tax Claim Bureau (Tax Bureau) without providing him notice of the

---

[1] In December 2019, Romig filed a document titled "Appeal From Administrative Review of Secretary's Office of Inmate Grievances & Appeals." This was followed in March 2020 by a document titled "Petition for Review (In the Nature of a Complaint in Mandamus)," seeking an order from this Court requiring the Department to respond to his aforementioned December 2019 filing and to enter a judgment against the Department for damages for failing to perform its "duty required by law." Petition for Review, 3/18/2020, at 2. The Petition for Review incorporates by reference his December 2019 grievance appeal. We view the documents, together, as constituting Romig's petition for review and distinguish them herein by date, rather than by the title Romig assigned to each filing. *See Madden v. Jeffes*, 482 A.2d 1162, 1165 (Pa. Cmwlth. 1984) ("We do not hold pro se complainants to the stringent standards expected of pleadings drafted by lawyers, and will examine the substance of their complaint to determine if [the complainants] would be entitled to relief if they proved the facts averred.").

[2] While her name is spelled "Brittian" in the caption, it appears that the correct spelling is Brittain. *See* Petition for Review, 12/17/2019, Attachment at 4.

rejection. Believing that his right to relief is clear and no material issue of fact is in dispute, Romig has filed a motion for judgment on the pleadings.[3] The Department has filed a cross-application for summary relief.

Romig, who is incarcerated at the State Correctional Institution (SCI) at Frackville, has filed a petition for review challenging the handling of his mail. The petition alleges that mail for SCI-Frackville is received and processed at SCI-Mahanoy. It further alleges that certified mail sent to Romig by the "Mifflin County Court of Common Pleas and [] Tax Bureau," *i.e.*, "[l]egal [m]ail," was rejected by SCI-Mahanoy's mailroom. Petition for Review, 12/17/2019, ¶2. Because SCI-Mahanoy did not notify Romig that it had rejected this certified mail, Romig filed a grievance with the Department's inmate grievance system.

Romig's grievance was denied. SCI-Mahanoy's mailroom supervisor, F. Walter, responded to Romig on September 19, 2019, stating, in pertinent part:

> *Mail coming from a Sheriff's Office is not considered legal mail* as per the [Department's] legal department. Any mail coming from the Sheriff's Office should be sent through Smart Communications. When mail is refused the mail is not opened and the inmate is not notified[.]

*Id*., Attachment at 2 (emphasis added). The petition asserts that Walter's response "seems to attempt to circumvent regular mail procedure for legal mail procedure." *Id*. ¶6.

Romig appealed the denial of his grievance to Kathy Brittain, Facility Manager, who upheld the denial. Brittain explained that Romig's grievance was

---

[3] Romig titled his filing "Motion for Judgment on Pleadings/Dispositive Motion," which the Court will treat as an application for summary relief under Pennsylvania Rule of Appellate Procedure 1532(b), PA.R.A.P. 1532(b). For summary relief, the record "is the same as a record for purposes of a motion for summary judgment." *Summit School, Inc. v. Department of Education*, 108 A.3d 192, 195-96 (Pa. Cmwlth. 2015).

2

inadequate because he did not "provide a date or any evidence to substantiate that mail was sent by [the] Mifflin County Court of Common Pleas" or state in his grievance that the rejected mail was sent by certified mail. Petition for Review, 12/17/2019, Attachment at 4. Romig notes that it was impossible for him to provide this information because he never received notice that his mail had been refused.

Romig appealed Brittain's response to the Department's Office of Inmate Grievances and Appeals, asserting that Brittain incorrectly applied the Department's mail policy. In his grievance appeal, Romig further contended that Brittain's response did not address his grievance "that the mail came from [the] 'Mifflin County Courthouse,' and relies only on the mention of the '[S]heriff's Office', [] in [an] attempt to circumvent the circumstances." *Id.*, Attachment at 5.

The Department's Chief Grievance Officer concluded that "[t]he possible scenario surrounding this returned mail was explained to you; however, without more specific information such as a date, no further information can be provided." Petition for Review, 12/17/2019, Attachment at 7. The Chief Grievance Officer added: "Further, despite your claims, no notification is required to be provided to an inmate when mail is refused[;] the sender is advised of the issue and has the option to fix it and resend the mail." *Id.*

In his petition for review, Romig, citing *Procunier v. Martinez*, 416 U.S. 396, 418-19 (1974), contends that an inmate must be afforded (1) notice of a mail rejection, (2) a reasonable opportunity to appeal the rejection, and (3) a review by a prison official other than the official who made the initial decision. He claims that the Department's rejection of his mail without notice to him violated his rights

3

under the First[4] and Fourteenth[5] Amendments to the United States Constitution. Petition for Review, 12/17/2019, ¶4. He also claims a violation of the Department's policy on processing an inmate's legal mail. Romig's petition asserts that an inmate must be notified whenever the Department rejects any inmate mail. Romig seeks an order from this Court awarding him $80,000 in "punitive damages" and compelling the Department "to formulate steps to prevent this from happening again." *Id*. at 3.

In response to Romig's petition for review, the Department filed preliminary objections asserting a lack of allegations personally involving John Wetzel, Kathy Brittain, and Keri Moore and a demurrer to Romig's First and Fourteenth Amendment claims. The preliminary objections were sustained in part and overruled in part. Wetzel, Brittain and Moore were dismissed from the matter, but the Department's demurrer to Romig's First and Fourteenth Amendment claims was overruled. Subsequently, the Department filed an answer to the petition for review.

On January 19, 2023, Romig filed a "Motion for Judgment on Pleadings/Dispositive Motion," arguing that "[i]t is clear that [his] constitutional rights have been violated by the Department['s] [] actions/inactions, resulting in loss of property damages." Romig Motion ¶1. The Department filed a cross-application for summary relief in the form of a motion for judgment on the pleadings, arguing

---

[4] U.S. CONST. amend. I. It states: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances."

[5] U.S. CONST. amend. XIV. It states, in part: "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law[.]"

that Romig cannot establish a deprivation of a protected interest because his claim relates to the rejection of a single piece of mail sent by the Tax Bureau.

An application for summary relief is governed by Pennsylvania Rule of Appellate Procedure 1532(b). Rule 1532(b) provides that "[a]ny time after the filing of a petition for review in an appellate or original jurisdiction matter, the court may on application enter judgment if the right of the applicant thereto is clear." PA.R.A.P. 1532(b). In evaluating an application for summary relief, the Court applies the same standards that apply to summary judgment. *Myers v. Commonwealth*, 128 A.3d 846, 849 (Pa. Cmwlth. 2015) (quoting *McGarry v. Pennsylvania Board of Probation and Parole*, 819 A.2d 1211, 1214 n.7 (Pa. Cmwlth. 2003)). Specifically, summary relief is appropriate where the moving "party's right to judgment is clear" and no material issues of fact are in dispute. *Myers*, 128 A.3d at 849 (quoting *McGarry*, 819 A.2d at 1214 n.7).

Mandamus is an extraordinary remedy used to compel the performance of a ministerial act or mandatory duty where a petitioner establishes (1) a clear legal right to relief, (2) a corresponding duty in the respondent, and (3) a lack of any other adequate and appropriate remedy at law. *Tindell v. Department of Corrections*, 87 A.3d 1029, 1034 (Pa. Cmwlth. 2014). The purpose of mandamus is not to establish rights or to compel performance of discretionary acts but, instead, to enforce rights that have been clearly established. *Id*. Ordinarily, "mandamus is not a proper vehicle for challenging the constitutionality of a statute, regulation or policy." *Clark v. Beard*, 918 A.2d 155, 159 (Pa. Cmwlth. 2007). This is because a writ of mandamus would compel "a governmental ministerial officer to act in disobedience of the requirements of a relevant statute, before there has been a judicial

pronouncement of [its] invalidity[.]" *Unger v. Hampton Township*, 263 A.2d 385, 388 (Pa. 1970) (quoting *Booz v. Reed*, 157 A.2d 170, 172 (Pa. 1960)).

This Court has considered the constitutionality of the Department's mail policy. In *Ortiz v. Pennsylvania Department of Corrections* (Pa. Cmwlth., No. 615 M.D. 2018, filed September 14, 2021) (unreported),[6] we examined the Department's handling of both privileged and non-privileged mail. There, an inmate at SCI-Pine Grove alleged that the Department's mail policy, at the time, imposed an impermissible burden on his constitutional rights to receive mail and to privacy because the original versions of his mail were sent to a third-party vendor where they were copied. Copies, not the original documents, were then sent to him. The inmate sought injunctive relief to enjoin the Department's mail policy.

We held that the handling of non-privileged mail does not implicate a right to privacy. With respect to privileged mail, the analysis is different. After Ortiz filed his petition, the Department entered into a settlement in federal court, agreeing to stop copying privileged mail and to continue to use the attorney control number system.[7] On that basis, we concluded: "[The] mail policy does not violate [the inmate's] constitutional rights." *Ortiz*, slip op. at 9.

Notably, *Ortiz* did not consider the issue of mail rejection and whether an inmate is entitled to notice thereof. We must, therefore, consider whether the Department's failure to notify Romig of rejected mail violated his constitutional rights. We begin with Romig's First Amendment claim.

---

[6] An unreported panel decision of Commonwealth Court, issued after January 15, 2008, may be cited for its persuasive value. *See* Commonwealth Court Internal Operating Procedure Section 414, 210 Pa. Code §69.414.

[7] The Department has established procedures for attorneys to send privileged legal mail to an inmate under Policy DC-ADM 803. This policy requires an attorney to obtain a control number pursuant to 37 Pa. Code §93.2.

6

Romig argues that his First Amendment rights were violated "because the mail had regards [sic] to the possible transfer of real estate property, currently owned by [Romig], of which he has a liberty interest in the real estate property, and deprivation of that protected liberty interest was hindered by the [Department's] withholding and returning of mail to sender without notice to intended recipient." Romig Brief at 6.

The First Amendment to the United States Constitution protects an inmate's general right to communicate by mail. *Rivera v. Silbaugh*, 240 A.3d 229, 238 (Pa. Cmwlth. 2020). To prove a claim of interference with this right, the plaintiff must show that the interference was done according to a "pattern and practice." *Hill v. Pennsylvania Department of Corrections*, 271 A.3d 569, 578 (Pa. Cmwlth. 2022) (quoting *Hill v. Commonwealth* (Pa. Cmwlth., No. 684 M.D. 2018, filed September 12, 2019), slip op. at 7). A "single, isolated interference with [an inmate's] personal mail [is] insufficient to constitute a First Amendment violation." *Rivera*, 240 A.3d at 238 (quoting *Nixon v. Secretary of Pennsylvania Department of Corrections*, 501 F. App'x 176, 178 (3d Cir. 2012)).

In this case, Romig's petition describes a single incident, which does not give rise to a constitutional violation. Thus, Romig has failed to establish a violation of the First Amendment.

We next address Romig's Fourteenth Amendment due process claim, which requires the plaintiff to establish the deprivation of a protected liberty or property interest. *Shore v. Pennsylvania Department of Corrections*, 168 A.3d 374, 383 (Pa. Cmwlth. 2017). Only then will the Court consider what type of procedural mechanism is required to satisfy due process. "Procedural due process rights are triggered by deprivation of a legally cognizable liberty interest. For a prisoner, a

7

deprivation occurs when the prison 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Feliciano v. Pennsylvania Department of Corrections*, 250 A.3d 1269, 1275 (Pa. Cmwlth. 2021) (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)). "Lesser restraints on a prisoner's freedom are deemed to fall 'within the expected perimeters of the sentence imposed by a court of law.'" *Id.* at 1275-76 (quoting *Sandin*, 515 U.S. at 484).

Here, the Department processed Romig's mail in accordance with its mail policy. On its face, Romig's mail did not appear to be legal mail because it did not originate with his attorney, the court, or an elected or appointed federal, state, or local official; it did not contain an attorney control number. Based on the allegations in the petition for review, the rejected mail was a notice from the Tax Bureau advising him of an impending sheriff's sale of his home and property. The question is whether the Department had a duty to provide notice to Romig that this mail had been rejected and returned to the sender.

In *Vogt v. Wetzel*, 8 F.4th 182 (3d Cir. 2021), the United States Third Circuit Court of Appeals held that prisons must notify inmates when their mail has been rejected.[8] That case involved facts, summarized by the Court of Appeals as follows:

> Three decades ago, Vogt and Arthur McClearn were part of a group who took Francis Landry to a quarry. There, the group forced Landry off a cliff into the water before rolling a "huge rock" in behind him. Landry suffered blunt force trauma and

---

[8] The *Vogt* decision is consistent with *Procunier*. In *Procunier*, the United States Supreme Court invalidated California prison regulations that provided for the routine censorship of inmates' outgoing personal correspondence, on the grounds that the regulations violated the free speech rights of the prisoners' correspondents. 416 U.S. at 408. "In the years after *Procunier* [], the [Supreme] Court abandoned the distinction between the free speech rights of inmates and their correspondents on the outside." *Hill v. Pennsylvania Department of Corrections*, 271 A.3d 569, 574 (Pa. Cmwlth. 2022) (quoting *Bieregu v. Reno*, 59 F.3d 1445, 1451-52 (3d Cir. 1995)).

8

drowned. Vogt and McClearn were arrested shortly afterward. McClearn pleaded guilty to third-degree murder. Vogt went to trial, where McClearn's testimony linked him to Landry's death. The jury convicted Vogt of several crimes, including first-degree murder. As a result, he was sentenced to life without parole.

Not long before McClearn died, he sent a letter to Vogt dated October 23, 2016, in which he recanted his trial testimony. Explaining he was "ready to tell the truth," McClearn said his testimony was a lie. McClearn wrote that he had a different partner in crime that night; Vogt was "passed out in the car" and "did not go to the quarry." So according to the letter—and contrary to McClearn's testimony at trial—Vogt did not have "anything to do with" Landry's murder.

McClearn's letter never made it to Vogt that fall. The prison's policy is to reject mail lacking a return address, so it rejected the letter. Some six months later, Vogt contacted a United States Postal Service reclamation center looking for a different mailing. The Post Office returned several items, one of which was McClearn's letter. But by that time, McClearn had been dead for about five months.

*Vogt*, 8 F.4th at 184 (internal citations omitted).

In *Vogt*, the Court of Appeals rejected the Department's contention that *Procunier* applied only to censorship cases. *Vogt* concerned a content-neutral mail rejection policy, and the Court of Appeals determined that "[t]he trouble with [the Department's] argument is *Procunier* identified a liberty interest in corresponding by mail[, a]nd just as a censorship policy constrains correspondence by mail, so too does a rejection policy." *Id.* at 186. The Third Circuit noted that "[b]ecause we hold Vogt has a liberty interest under *Procunier*, we need not address whether he has a property interest." *Id.* at 187. Noting that it was unclear whether Vogt had alleged a free speech claim, the Court of Appeals determined that the issue should be resolved by the District Court on remand. The Court concluded as follows:

9

> A host of compelling interests can justify prison mail regulations. But prisoners like Vogt have a liberty interest in corresponding by mail. So, when the prison rejected his letter, notification was required. Consistent with these principles, Vogt stated a claim that his right to procedural due process was violated because he alleged [the] letter [at issue] was rejected without notice.

*Id*. Accordingly, the Court of Appeals vacated the District Court's order dismissing Vogt's Fourteenth Amendment procedural due process claim. In sum, *Vogt* established that prisons must provide minimal procedural safeguards when they censor or withhold delivery of a particular letter.

Here, a letter was sent to Romig from the Tax Bureau. The Department rejected that letter and returned it to the sender, without providing notice to Romig. Romig has a liberty interest in corresponding by mail. *Vogt*, 8 F.4th at 187. When the Department rejected the letter from the Tax Bureau addressed to Romig and did not provide him with notice of such, it violated Romig's right to due process. *See generally Vogt*, 8 F.4th at 186-87; *Procunier*, 416 U.S. at 417-18.

The Department argues that Romig's claim is barred by qualified immunity because the constitutional right of a prisoner to receive notice of prison officials' rejection of that inmate's incoming, non-legal mail had not been clearly established when it occurred. However, *Procunier* predates *Vogt*, and it established a due process right to notice and an opportunity to challenge a prison's rejection of an inmate's mail. *See Mojica Carrion v. Wetzel*, No. 4:22-CV-00051, 2023 WL 4534597, at *7 (M.D. Pa. July 13, 2023). Therefore, qualified immunity does not shield the Department from Romig's claim.

Romig seeks an order from this Court awarding him $80,000 in "punitive damages" and compelling the Department "to formulate steps to prevent this from happening again." Petition for Review, 12/17/2019, at 2-3. The

10

Department counters that any injury sustained by Romig as a result of the rejection of the letter was not irreparable. Department's Brief at 15. The Real Estate Tax Sale Law (Tax Sale Law)[9] permits a taxpayer to file objections or exceptions to the tax sale itself.

First, Romig's claim for punitive damages against the Commonwealth and its agencies and employees is barred.[10] 42 Pa. C.S. §8528(c); *Feingold v. Southeastern Pennsylvania Transportation Authority*, 517 A.2d 1270, 1276-77 & n.8 (Pa. 1986). Second, on March 31, 2022, the Department directed all SCI mailrooms and security officers, "effective immediately," that "mailrooms should begin using the Unacceptable Correspondence Form any time mail is addressed to an inmate, the inmate's identity is known, and the mail is being returned to the sender, confiscated or otherwise will not be delivered to the inmate by the mailroom." Department New Matter ¶¶1-2. Romig admits that the Department "began to make changes to [the mail policy], where inmates must be notified of incoming mail that is refused." Romig Answer to New Matter ¶1. In fact, on March 5, 2022, Romig received an Unacceptable Correspondence Form for mail sent from the Tax Bureau without a control number. Department New Matter ¶3; Romig Answer to New Matter ¶3 ("This New Matter should not be confused with the piece

---

[9] Act of July 7, 1947, P.L. 1368, *as amended*, 72 P.S. §§5860.101-5860.803.

[10] Further, Romig did not suffer any damages. After learning that the Tax Bureau sold his property, Romig filed a motion requesting that the tax sale be set aside for various reasons, including improper notice. *Romig v. Mifflin County Tax Claim Bureau* (Pa. Cmwlth., No. 1138 C.D. 2021, filed August 10, 2023), slip op. at 2. The trial court granted Romig's motion. Thereafter, the Tax Bureau filed a petition for confirmation of a judicial sale of multiple properties, which included Romig's property. The trial court issued a rule to show cause, and following a rule to show cause hearing, the trial court again "set aside" Romig's property from judicial sale. *Id*. Since the trial court sustained Romig's objections or exceptions, we cannot say that he has been damaged by not receiving notice that a letter from the Tax Bureau had been rejected by the Department's mail room.

11

of mail received and returned to sender, without any notice given to the intended party that any mail came for him on or about Sept. 3, 2019.").

Considering that the Department has modified its mail policy, it appears the outcome Romig sought with his petition has been attained. "[A]n actual case or controversy must be extant at all stages of review[.]" *Lyft, Inc. v. Pennsylvania Public Utility Commission*, 145 A.3d 1235, 1248 (Pa. Cmwlth. 2016) (quoting *Pap's A.M. v. City of Erie*, 812 A.2d 591, 600 (Pa. 2002)). "A matter is moot when a court cannot enter an order that has any legal effect." *Id.* (quoting *Mistich v. Pennsylvania Board of Probation and Parole*, 863 A.2d 116, 121 (Pa. Cmwlth. 2004)). "[M]ootness, however it may have come about, simply deprives us of our power to act; there is nothing for us to remedy, even if we were disposed to do so." *Id.* (quoting *Mistich*, 863 A.2d at 121). Here, Romig received the specific relief he sought. There is no further relief that can be granted. Accordingly, Romig's petition for review is moot.

For the above-stated reasons, we dismiss Romig's motion for judgment on the pleadings and the Department's cross-application for summary relief.

_____
MARY HANNAH LEAVITT, President Judge Emerita

12

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Michael C. Romig,            :
           Petitioner     :
                            :
         v.                 :     No. 684 M.D. 2019
                            :
John Wetzel, Kathy Brittian,     :
Keri Moore and Department of    :
Corrections,                  :
         Respondents:  

## **O R D E R**

AND NOW this 29th day of January, 2024, because there is no further relief to be granted regarding the issue of notification to an inmate of mail rejected by a prison, and for the reasons set forth in the accompanying opinion, Michael C. Romig's petition for review is DISMISSED as moot.

The motion for judgment on the pleadings filed by Michael C. Romig and the Department of Corrections' cross-application for summary relief are DISMISSED.

_____
MARY HANNAH LEAVITT, President Judge Emerita